IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHANNON T. LAEL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:13-cv-1226-SPM |
| SIX FLAGS THEME PARKS INC. | ) ) ) |
| Defendant. | ) ) |

## DEFENDANT SIX FLAGS THEME PARKS INC.'S TRIAL BRIEF

COMES NOW Defendant Six Flags Theme Parks Inc. (hereinafter Six Flags), by and through its undersigned counsel of record, and for its Trial Brief pursuant to the Court's Third Amended Case Management Order (Doc. 44) of August 19, 2014, states as follows:

*Introduction*

This is a personal injury case arising from an alleged neck and upper back injury Plaintiff Shannon Lael ("Plaintiff") sustained while riding an amusement park ride known as the Highland Fling at Six Flags St. Louis on or about July 8, 2006. The case was originally filed in the Circuit Court of St. Louis County, Missouri, voluntarily dismissed by Plaintiff less than one month from trial in January 2013, subsequently re-filed in St. Louis County, Missouri, and removed by Six Flags to the United States District Court for the Eastern District of Missouri on June 27, 2013, based on diversity. (Doc. 1). Plaintiff claims that while boarding the gondola-type car of the Highland Fling, the ride's "hydraulic system or other mechanical system associated with the

safety bar mechanism failed, causing the safety bar to fall without warning," causing injury to Plaintiff. (Doc. 1-1, at Petition, ¶ 8).[1]

Plaintiff has two theories of liability against Six Flags. The first is a negligence count, alleging Six Flags (1) failed to warn Plaintiff that the safety bar for the gondola seat could fail and fall; (2) negligently failed to maintain the mechanical processes or machinery of the gondola seat safety bar; and (3) negligently allowed continued operation of the Highland Fling when it had notice of similar other mechanical failures of the gondola safety bar. (Doc. 1-1 at ¶ 12). Plaintiff's liability expert William Avery, however, had no criticisms of the operation of the ride or warnings. Although he thought Six Flags should have monitored the life history of the gas shocks on the gondolas, he cannot say the failure to do so caused Plaintiff's injuries. Accordingly, there are no specific acts of negligence to be submitted to the jury. The second theory of liability is based on *res ipsa loquitor*, and is located in Count II of Plaintiff's Complaint. (Doc. 1-1 at pp. 4-5). As explained in the first part of Six Flags' trial brief, there is no substantial evidence of either the negligence or *res ipsa loquitor* theories such that a submissible case can be presented to the jury for deliberation. A motion for directed verdict will be appropriate at the close of Plaintiff's evidence.

Further, notwithstanding the major liability obstacles for Plaintiff, she has numerous proof problems with the damages it is anticipated she wants to claim before the jury. She has no expert testimony supporting the award of specific future medical specials. Her treating physician Dr. Doty, who supplied a report in this case and was deposed, did not state with any specificity the types of any future medical treatment Plaintiff might need and did not provide a dollar amount for any future damages. Plaintiff's retained physician, Dr. Marrese, likewise leaves

---

[1] NOTE: The subject componentry of the Highland Fling gondola lid was <u>not</u> operated by hydraulics, but rather by gas shocks similar to the type that operates the trunk of one's automobile. Any references by Plaintiff to "hydraulics" are erroneous.

2

5799552.1

Plaintiff lacking in these areas. As such, Plaintiff has no medical testimony to support claimed future medical bills and expenses. The same holds true for Plaintiff's claimed inability to work since 2008 and her claimed inability to work for the remainder of her life. Simply stated, Plaintiff has no expert testimony to support her past and future lost wage claims. In general, Plaintiff's bare assertions regarding her medical specials and lost wages, unsupported by any medical testimony, should be excluded at trial (and will be the subject of motions in limine).

*Factual and Legal Issues*

### I. PLAINTIFF LACKS SUFFICIENT EVIDENCE OF SPECIFIC ACTS OF NEGLIGENCE ALLEGED IN COUNT I

Plaintiff's allegations of negligence in this case concern the operation of a mechanical device, namely an amusement park ride called the Highland Fling.[2] This is not a simple slip and fall case where an obvious hazard within the jury's common understanding obviates the need for expert testimony. As such, Plaintiff requires expert testimony to explain to the jury her theories of negligence. Expert testimony is appropriate and proper when the subject is one which a person of normal experience and qualifications would not be able to decide without technical assistance of one having unusual knowledge of the subject by reason of skill, experience or education. *Schillie v. Atchison, T. & S. F. Ry. Col*, 222 F.2d 810, 814 (8th Cir. 1955).

**A. Negligent Maintenance**

The only liability expert retained and disclosed by Plaintiff in this matter is William Avery. Mr. Avery agrees that Six Flags maintained the ride properly and in accordance with the manufacturer's manual. Even with Mr. Avery's anticipated testimony at trial about his proposed "life history summary," which he opines Six Flags failed to employ with respect to the gas shocks of the Highland Fling, there would still be no substantial evidence to overcome a directed

---

[2] The ride's generic name given by its manufacturer is the "Enterprise."

3

5799552.1

verdict on the negligence theories. Specifically, the Court has now ruled that Mr. Avery will not be allowed to testify that Plaintiff's accident would not have occurred but for the failure of Six Flags to implement the life history summary method. (Doc. 58, pp. 9-10). Mr. Avery testified that even if his life history summary were implemented, such that the gas shocks would have been changed out at intervals, Plaintiff's injury might still have occurred. (Doc. 49-5, pp. 101:7-15; Doc. 49-6, pp. 155:8-17.) Thus, there is no evidence that the only specific act of negligence directed at Six Flags by Mr. Avery caused Plaintiff's injuries. Mr. Avery's proposed theory in no way aids the jury because of the lack of any evidence connecting that theory with Plaintiff's injury. In fact, Mr. Avery conceded that the preventative maintenance checks at Six Flags performed by the maintenance workers on the subject ride were common practices, and that he had no reason to disagree that Six Flags maintained the ride in accordance with the manufacturer's operational manual. (Doc. 49-6, pp. 175:10-16, 178:9-16). Even a cursory examination of Mr. Avery's anticipated testimony shows a negligence claim concerning negligent maintenance against Six Flags cannot stand.

**B. Negligent Failure to Warn**

In her Complaint, the first specific act of alleged negligence pled is Six Flags' failure to warn Plaintiff about potential failures involving the gondola lid. (Doc. 1-1, ¶ 12(a)). In no uncertain terms, Mr. Avery testified that he is not critical of the instructions or warning signs at Six Flags concerning the Highland Fling. (Doc. 49-5, pp. 73:1-5). Plaintiff has adduced absolutely no evidence in this case of any alleged failure to warn, and even her expert concedes he takes no issue with the instructions given at the ride or the warning signs erected around the ride. Consequently, the failure to warn allegation should not be submitted to the jury.

4

### C. Negligent Operation

The final alleged act of specific negligence found in Count I of Plaintiff's Complaint is the purported negligent operation of the ride. This last specific negligent act should likewise not be submitted to the jury. Mr. Avery explicitly testified that he is not critical of the of the ride operators. (Doc. 49-5, pp. 101:16-19). Plaintiff alleges Six Flags continued to operate the Highland Fling when it had notice of other similar failures to that of Plaintiff's alleged occurrence. (Doc. 1-1, ¶ 12(c)). Six Flags indicated in discovery responses that it had no notice of other incidents like Plaintiff's involving the Highland Fling, and subsequently produced six (6) maintenance personnel who testified they had no prior knowledge of similar purported mechanical failures. Likewise, Plaintiff has produced no documentation in her initial disclosures or in written discovery evidencing any prior similar incidents. Finally, Mr. Avery even conceded that he is unaware of any prior similar incidents like that alleged by Plaintiff to have occurred on July 8, 2006. (Doc. 49-5, pp. 103:6-12).

### D. Conclusion

As such, Plaintiff lacks substantial evidence from which a jury could conclude that any one of the three independent acts of negligence alleged in Count I occurred, and that Six Flags' alleged failure to enact and utilize a life history summary for the ride's gas shocks caused Plaintiff's incident. Mr. Avery's testimony unequivocally undercuts Plaintiff on all three alleged acts of specific negligence and, in fact, supports Six Flags defenses as to each one. In light of the lack of any substantial and meaningful evidence regarding the three alleged acts of specific negligence against Six Flags, a directed verdict on Count I of Plaintiff's Complaint should be granted by this Court at the close of Plaintiff's evidence.

II.   PLAINTIFF'S *RES IPSA LOQUITOR* THEORY IS INAPPLICABLE

   A. *Res Ipsa Loquitor* is Inapplicable Because Plaintiff Alleges a Claim Based on Specific Acts of Negligence

In Count II of Plaintiff's Complaint, she alleges "General Negligence" under the theory of *res ipsa loquitor*. (Doc. 1-1, pp. 4-5). This theory is inapplicable because Plaintiff is simultaneously alleging a claim based on specific acts of negligence. An amusement park case from Maryland discussing a very similar fact pattern is illustrative of why Plaintiff's *res ipsa loquitor* cause of action should not be permitted in this case. In *McCartney v. Wild World Holding, Inc.*, 85 F.3d 616, 1996 WL 226105 (4th Cir. 1996), a plaintiff who injured his knee while riding a water slide ride at an amusement park attempted to bring a *res ipsa loquitor* theory, but the trial judge denied plaintiff's request for a *res ipsa loquitor* instruction. The appellate court affirmed, indicating that plaintiff's use of an expert to explain the park's specific acts negligence showed the theory's inapplicability. Id. at *4.

As indicated in *McCartney*, when a Plaintiff relies upon an expert to testify regarding specific acts of negligence, *res ipsa loquitor* is not an appropriate alternative claim. In this case, Plaintiff has endorsed Mr. Avery to testify that Six Flags' maintenance procedures were negligent due to the lack of a "life history summary" for the gondola lid's gas shocks. Given this specific alleged act of negligence, *res ipsa loquitor* is simply inapplicable to the case given the manner by which it has been prosecuted by Plaintiff to date. As the Court knows, *res ipsa loquitor* claims are suitable in medical negligence cases involving retained instruments and other cases in which otherwise unexplained outcomes transpire in the operating room where the medical professionals have knowledge as to what occurred but the patient does not. But those cases are not akin to the instant matter. For this reason, as in *McCartney*, this Court should not submit a *res ipsa loquitor* instruction to the jury on this set of facts.

5799552.1

### B. *Res Ipsa Loquitor* is Inapplicable Because Plaintiff Cannot Satisfy the Required Elements of the Cause of Action

In addition to the previously stated reason for the inapplicability of *res ipsa loquitor* to this case, a second equally logical reason for the theory's exclusion exists as well – namely, Plaintiff cannot satisfy the cause of action's elements of: (1) "exclusive control," and (2) Six Flags possession of "superior knowledge" about the cause of the alleged incident. This theory is inapplicable to the facts as presented through Plaintiff's own testimony that confirms she caused the gondola to sway before the incident, in addition to the fact that Highland Fling riders can close the gondola lid themselves. These facts counter the "exclusive control" element required of the *res ipsa loquitor* theory. Additionally, Six Flags has no information as to how Plaintiff's accident occurred. All of that testimony has come from Plaintiff herself. Accordingly, the third required element for a *res ipsa loquitor* case, that the defendant must have "superior knowledge" of the cause of the alleged occurrence, is not satisfied.

The doctrine of *res ipsa loquitur* applies when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; and (c) the defendant possesses superior knowledge or means of information as to the cause of the occurrence. *Bass v. Nooney Co.*, 646 S.W.2d 765 (Mo. 1983). In *Marshall Interiors, Inc. v. YMCA of Greater St. Louis*, 787 S.W.2d 329 (Mo. Ct. App. 1990), the plaintiff attempted to use the *res ipsa loquitor* theory to show the YMCA was at fault for property damage allegedly caused by water from a whirlpool. At issue in the case was whether the YMCA had control over the water which caused the alleged damage. When the defendant does not have exclusive control of the instrumentality, "the inference that the defendant's negligence caused the accident does not necessarily follow." *Id.* at 331, citing *Mahan v. Missouri Pac. R.R. Co.*, 760 S.W.2d 510, 513 (Mo. Ct. App. 1988).

Plaintiff failed to show the incident was "caused by an instrumentality" under the YMCA's control. Although water caused plaintiff's damages, the source of the water was not established. Non-YMCA witnesses used a shower adjacent to the whirlpool, and the water in the whirlpool was shown to have an odor whereas the water causing the property damage had no odor. Id.

Although there are no Missouri cases discussing the *res ipsa loquitor* theory in the context of amusement park rides, cases from other jurisdictions are instructive. In *Woolbright v. Six Flags Over Georgia, Inc.*, 321 S.E. 2d 787 (Ga. App. 1984), the appellate court affirmed the trial court's issuance of summary judgment in favor of the amusement park because plaintiff's broken clavicle was not of such an unexplainable nature as that required by the doctrine of *res ipsa loquitor*. Id. at 788. In another Georgia case, the Eleventh Circuit affirmed the district court's decision to refuse to give the *res ipsa loquitor* instruction. *Harlan by Harlan v. Six Flags Over Georgia, Inc.*, 699 F.2d 521 (11th Cir. 1983). In that case, like Count II of Ms. Lael's Complaint, plaintiff pled and attempted to prove a specific act of negligence. In addition, the evidence developed at trial did not establish with certainty the manner in which plaintiff's injury occurred, and did not foreclose the possibility that an intervening act or event caused the injury. Id. at 523.

In the instant matter, Plaintiff cannot satisfy the exclusive control element of *res ipsa loquitor*. Plaintiff specifically testified that she generated "a bit of swing" as she stepped in the gondola. (Doc. 49-1, pp. 54:20-55:4). As such, her body exerted forces on the gondola and caused it to generate movement. Plaintiff herself was in control of the gondola and its lid when the incident occurred. Further, Mr. Avery testified that it was permissible for riders like Plaintiff to close the gondola lid themselves, i.e. exert control over the ride. (Doc. 49-5, pp. 72:15-25).

Given this unequivocal evidence, it cannot be said that Six Flags had "exclusive control" over the instrumentality which allegedly caused Plaintiff's injury. Further, Plaintiff cannot satisfy the third required element of *res ipsa loquitor* because Plaintiff has set forth no evidence showing Six Flags had "superior knowledge" about the cause of the alleged incident – in fact, the only evidence in this case about the facts of the alleged incident are from Plaintiff's testimony. As such, Plaintiff herself is the party with superior knowledge as to the cause of the incident, not Six Flags. For these reasons, Plaintiff's *res ipsa loquitor* claim against Six Flags should not be submitted for consideration by the jury.

### III. PLAINTIFF LACKS SUFFICIENT EXPERT TESTIMONY TO SUBMIT A CLAIM FOR FUTURE MEDICAL DAMAGES

It is anticipated that Plaintiff will attempt to introduce evidence of particular future medical needs, and attempt to black board future medical special damages based on those needs. What is significantly lacking from Plaintiff's case, however, is any substantial evidence supporting future medical needs. The rule on the admissibility of claims for future medical damages is that an expert witness can only testify as to the future consequences of an injury if they are reasonably certain to occur. *Stuart v. State Farm Mu. Auto. Ins. Co.*, 699 S.W.2d 450, 455 (Mo. Ct. App. 1985) citing *Hahn v. McDowell*, 349 S.W.2d 479, 482 (Mo. Ct. App. 1961) and *Thienes v. Harlin Fruit Co.*, 499 S.W.2d 223, 229-30 (Mo. Ct. App. 1973). Consequences that are contingent, speculative or merely possible are not to be considered by the jury in determining damages. Id.

The case of *First National Bank of Fort Smith v. Kansas City Southern Ry. Co.*, 865 S.W.2d 719, 738 (Mo. Ct. App. 1993), exemplifies a case in which speculative future medical damages were not allowed to be considered by a jury. The plaintiff in that case presented evidence of serious physical injuries resulting from an accident but failed to offer medical

testimony that the plaintiff would become a paraplegic or be confined to a wheelchair. Id. The trial court nonetheless admitted testimony from a life care planner who assumed that the plaintiff would become a paraplegic or confined to a wheelchair and who opined that the related care would cost $1.8 million. The Court of Appeals held that because the life care planner's opinion lacked substantial evidentiary support, the court erred in admitting this opinion because "future damages in a personal injury action are not compensable unless reasonably certain to occur." Id. quoting *Bennett v. Mallinckrodt*, 698 S.W.2d 854, 866 (Mo. Ct. App. 1985).

As shown below, neither of the doctors disclosed by Plaintiff as opinion witnesses – Dr. Anthony Marrese or Dr. Catherine Doty – provide the necessary testimony to submit a claim for future medical damages. Additionally, Plaintiff has not endorsed a life care planner to project any purported future care needs, and her economist has not calculated the present value of any future care needs whatsoever. Given this lack of expert support, the jury should not be permitted to consider future medical special damages.

**A. Dr. Marrese**

When Ms. Lael's case was first filed in the Circuit Court of St. Louis County, Missouri, she endorsed Dr. Anthony Marrese to testify on her behalf. The first time Dr. Marrese briefly examined Plaintiff was back in *2009* when he was retained by prior counsel. He prepared an updated report regarding his last, and likewise very brief, examination of Plaintiff on September 13, 2012, that was performed just before his deposition in the state court case. *See* Dr. Marrese's Report Dated September 17, 2012, attached hereto as Exhibit A. In his recommendation section, he makes no mention of the need for any future surgeries, treatments, injections, or other invasive therapies. He simply recommends that "she stay away from Vicodin or any type of narcotic pain medication," and recommended non-impact exercises. Id. Dr. Marrese has not

10

5799552.1

seen Plaintiff since September 2012, and his report submitted in this federal case only summarizes his prior opinions.

### B. Dr. Doty

Plaintiff also endorsed her prior treating pain management specialist, Dr. Catherine Doty, as an expert witness in this case, and she subsequently prepared an undated report summarizing her opinions of Ms. Lael's condition. Although Dr. Doty indicated in both her report and her testimony that Plaintiff would have recurrent exacerbations of her symptoms in the future (approximately two per year), it is significant that she did not specify the particular of care or treatment she might require nor any associated costs.

### C. Life Care Planner/Economist Experts

Plaintiff never endorsed a life care planner to specify the costs associated with the vague statements about future care needs made by Dr. Doty (or Dr. Marrese). Further, Plaintiff economist Karen Tabak never put the any purported future medical care costs in present value dollars. In fact, Ms. Tabak never dealt with the subject of future medical costs in her report or at her deposition. *See* Report of Karen Tabak, attached hereto as <u>Exhibit C</u>

### D. Conclusion

Based on the lack of expert testimony, there is no evidence Plaintiff can introduce at trial to support an award for future medical care costs associated with her alleged injuries. Given the lack of medical support for specific future medical care costs, Plaintiff should be prohibited from attempting to submit any such damages to the jury.

## IV. PLAINTIFF LACKS SUFFICIENT EXPERT TESTIMONY TO SUBMIT A CLAIM FOR FUTURE LOST WAGES

Plaintiff claims she has been unable to work since 2008, approximately two years after the alleged incident at Six Flags. Plaintiff endorsed economist Karen Tabak, who calculated the

present value of Plaintiff's past and future lost wages to be $2,731,930. Notably, she was not given any medical testimony, medical records, or vocational study indicating this assumption was supported by any evidence. Instead, Ms. Tabak testified that she was told by Plaintiff's counsel to *assume* Ms. Lael was completely unable to work. *See* Deposition of Karen Tabak attached hereto as Exhibit B, at 9:17-10:20. In this case, no medical witnesses have testified or reported that Plaintiff cannot work due to disability from the Six Flags incident. Based solely on the assumption given to her from Plaintiff's counsel, Ms. Tabak calculated past and future wage losses from the last day Plaintiff worked in California (April 30, 2008) to an assumed retirement age of 67. *See* Report of Karen Tabak, attached hereto as Exhibit C.

This issue is governed by the Missouri Court of Appeals' holding in *Hobbs v. Harken*, 969 S.W.2d 318 (Mo. Ct. App. 1998), which had facts virtually identical to those in this case. In *Hobbs*, economist Dr. John Ward relied solely on information from the plaintiff's attorney that plaintiff would be unable to work for 20 years. The Court found that since there was no medical evidence of such a long-lasting future injury (and associated disability), "then the mere fact that [plaintiff's] attorney said there would be such evidence could not bootstrap Dr. Ward's opinion into admissible evidence, for it would not be otherwise reliable." Id. at 322. The Court held the admission of the economist's future wage loss calculations and opinions was reversible error. Id. at 325.

In the instant matter, the reason Ms. Tabak did not have the required basis to offer wage loss opinions is because there is no such evidence; there is simply no medical evidence of Plaintiff's claimed inability to work. Ms. Tabak cannot base her opinions on unsupported assumptions provided by Plaintiff's counsel. Accordingly, she should not be allowed to testify and offer opinions about Plaintiff's hypothetical past and future wage loss claims.

12

5799552.1

*Conclusion*

As noted above, Plaintiff cannot show evidence of any of the three acts of specific negligence alleged in Count I of her Petition, and the theory of *res ipsa loquitor* is inapplicable to this case.

With respect to the damages, there is no expert support for plaintiff's claimed future medical damages and wage loss. As such, these aspects of Plaintiff's damages, even if she were able to get her case to the jury for deliberation, are not admissible.

A directed verdict at the close of Plaintiff's evidence will be the logical conclusion to this matter based on the totality of the facts and opinions to be presented at trial.

SANDBERG PHOENIX & von GONTARD P.C.

By: /s/ *Reed W. Sugg*
Reed W. Sugg, #29314
David Z. Hoffman, #55237
600 Washington Avenue - 15th Floor
St. Louis, MO  63101-1313
314-231-3332
314-241-7604 (Fax)
rsugg@sandbergphoenix.com
dhoffman@sandbergphoenix.com

*Attorneys for Defendant*
*Six Flags Theme Parks Inc.*

## Certificate of Service

I hereby certify that on this 30th day of December, 2014, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Charles H. Billings
Bruntrager & Billings PC
1735 S. Big Bend Blvd.
St. Louis, MO 63117

*Attorney for Plaintiff*

/s/ Reed W. Sugg